UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SAM GALLOWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:05-CV-545 |
| ) | (VARLAN/GUYTON) |
| BIG G EXPRESS, INC., and COMMERCE ) | |
| AND INDUSTRY INSURANCE COMPANY, ) | |
| ) | |
| Intervening Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VOLVO TRUCKS NORTH AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This civil action is before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Order [Doc. 60] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the defendant's Motion to Exclude the Testimony and Report of Plaintiff's Expert Farhad Booeshaghi, Ph.D. [Doc. 50], and the plaintiffs' Motion in Limine to Exclude Testimony of Defendant's Proffered Expert, Heino W. Scharf [Doc. 51], Motion in Limine to Exclude Testimony of Defendant's Proffered Expert, Charles E. Bird [Doc. 53], and Motion in Limine to Exclude Supplemental Opinion Testimony of Defendant's Proffered Expert, Charles E. Bird. [Doc. 57] On May 16, 2008, the parties came before the Court for a hearing on the instant motion. After the hearing, the Court took the matter under advisement, and the motions are now ripe for adjudication.

Plaintiff Sam Galloway, intervening plaintiff Big G Express, Inc., and intervening plaintiff Commerce and Industry Insurance Company (collectively, "Plaintiffs") move the Court to exclude

the testimony of defendant Volvo Trucks North America, Inc.'s ("Defendant") experts, Heino Scharf and Charles E. Bird. In turn, Defendant moves the Court to exclude the testimony of Plaintiffs' expert, Farhad Booeshaghi, Ph.D. The Court will address each expert in turn.

## I.  Background

This lawsuit arises from an alleged defect in the front windshield (the "Windshield") of a tractor trailer (the "Vehicle") that was owned by intervening plaintiff Big G Express, Inc. and was being driven by plaintiff Sam Galloway. On March 4, 2004, Mr. Galloway was driving the Vehicle on I-240 near Oklahoma City, Oklahoma. While passing another semi-truck on the right, what is described as a wall of water splashed up from the other truck, striking the Windshield and allegedly causing the Windshield to collapse, injuring Mr. Galloway. Plaintiffs allege that Defendant was negligent in the manufacture and design of the Vehicle and, more specifically, the Windshield, resulting in an unreasonably defective and dangerous product. Plaintiffs have filed suit under the Tennessee Products Liability Act and Section 402(a) of the Restatement of Torts.

## II.  Applicable Law: Admissibility of Expert Testimony

The parties each challenge the admissibility of the opposing party's expert testimony under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2

Fed. R. Evid. 702. The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153. The party proffering the expert testimony bears the burden of showing its admissibility under Rule 702 by a preponderance of the evidence. Daubert, 509 U.S. at 592 n. 10. With this framework in mind, the Court will now address the instant motions.

### III. Defendant's Motion to Exclude the Testimony and Report of Plaintiff's Expert Farhad Booeshaghi, Ph.D. [Doc. 50]

Defendant moves the Court to exclude the opinions of the Plaintiffs' expert Farhad Booeshaghi, Ph.D. ("Dr. Booeshaghi"). As grounds, Defendant contends that Dr. Booeshaghi's methodology is flawed, that Dr. Booeshaghi's testimony will not be helpful to the trier of fact, and that Dr. Booeshaghi lacks the necessary experience with the products and materials at issue. Plaintiffs oppose the motion, arguing that Dr. Booeshaghi's opinions satisfy the dictates of Daubert and are admissible.

#### A. Background and Training

Dr. Booeshaghi received a B.S. and an M.S. in Mechanical Engineering from the University of Alabama, a Ph.D. in Mechanical Engineering from Florida State University, and, most recently, a certification in Biomedical Engineering from the University of Florida. [Doc. 50-3] Dr. Booeshaghi is currently employed as a consulting engineer and managing member by Global Engineering and Scientific Solutions, LLC. [Id.] His past relevant employment includes approximately fifteen years experience as a consulting engineer with Benedict Engineering Company, including approximately eight years as an engineering team leader and one year as a general manager, and approximately nine years as an adjunct professor at the Florida State University College of Engineering. [Id.] Dr. Booeshaghi holds professional engineer licences in the states of Florida, Alabama, California, and South Carolina, and possesses an accreditation from the Commission for Traffic Accident Reconstruction. [Id.] Dr. Booeshaghi is a member of a number of professional organizations, including, but not limited to, the Society of Automotive Engineers, the American Society of Mechanical Engineers, the American Society of Safety Engineers, and the American Society for Testing and Materials. [Id.] Additionally, Dr. Booeshaghi's relevant

4

experience includes "accident reconstruction, including underride, visibility, and intersection collisions" and "[i]nvestigation of accidents related to product design, manufacturing, assembly, maintenance, service, and repair in industrial and residential settings." [Id.]

In ruling on the types of experience and training sufficient to allow a witness' qualification as an expert, other courts have recognized that:

> The test for expertise is not "overly rigorous" and "the trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." Lovato v. Burlington Northern & Santa Fe Ry., No. CIV.A. 00-RB-2584CBS, 2002 U.S. Dist. LEXIS 16844, at *3 (D. Colo. June 24, 2002) (citing Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996)). Any weaknesses in [a witness'] expertise or specialization in the area [at issue] may be addressed in cross-examination. See First Tenn. Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 333 (6th Cir. 2001) ("to the extent that [the proffered expert] may have lacked familiarity with some aspects of [the subject matter at issue], the district court correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility").

Starnes v. Sears Roebuck & Co., No. 01-2804 B An, 2005 U.S. Dist. LEXIS 35755, at *9-10 (W.D. Tenn. Dec. 13, 2005). Applying this jurisprudence to the experience and training of Dr. Booeshaghi, the Court finds that Dr. Booeshaghi's training and experience, while not focused in the area of windshields, are sufficient for Dr. Booeshaghi to offer expert opinions in the area at issue. The Court finds, at this point, that Dr. Booeshaghi's training and experience in the field of mechanical engineering, coupled with his experience in accident investigation,[1] are sufficient for qualification

---

[1]The Court notes that, while the incident at issue differs from what might be considered a standard automobile accident, because the incident at issue did not involve the collision of two vehicles, nor, by Plaintiff's allegations, did it involve the collision of a vehicle with another solid object, the Court still finds that Dr. Booeshaghi's experience in working with automobile accidents, coupled with his other training and experience, are sufficient to allow him to opine in

5

in this matter.

**B.     Facts and Data**

The Court turns next to an analysis of the facts and data underlying Dr. Booeshaghi's opinion. As the Court noted above, Daubert requires that expert testimony be based upon sufficient facts or data. In his report, Dr. Booeshaghi identifies several items he relied upon in forming his opinions, including, but not limited to: personal inspection, documentation, and analysis of the Vehicle, its windshield gasket, and an exemplar windshield; the traffic incident report; Plaintiff's deposition; service and maintenance records for the Vehicle; engineering drawings; discovery provided by Defendant; applicable standards and technical data; and climatological data relevant to the incident. [Doc. 50-3] Based upon this information, the Court finds that Dr. Booeshaghi's opinions are sufficiently grounded in the facts and data relating to the incident.

**C.     Methodology**

The Court turns next to the methodology employed by Dr. Booeshaghi in forming his opinion. This is the aspect of Dr. Booeshaghi's opinion criticized most by Defendant, with Defendant contending that Dr. Booeshaghi's model of one cubic foot of water striking the Windshield is simply physically impossible in the real world. In the case of Jarvis v. Ford Motor Co., 283 F.3d 33 (2d Cir. 2002), the Second Circuit addressed a similar disagreement over whether an expert's testimony relating to causation was actually possible in the real world. In Jarvis, plaintiff's expert, Samuel Sero, an electrical engineer, opined as to the possible cause of the malfunction at issue, hypothesizing a chain of events that the defendant's experts contended could

---

this area. Any perceived deficiencies in an expert's background are, of course, a valid subject for cross-examination at trial.

not actually occur. Id. at 41-42. In ruling on the admissibility of Sero's opinion, the Second Circuit held that:

> Sero was not "proposing to testify as to the likelihood that a malfunction in the cruise control caused [Jarvis's] accident. " Rather, the court pointed out:
>
> Sero is proposing to testify that the design of the 1991 Aerostar makes it physically possible for this malfunction to occur, and wishes to demonstrate to the jury how it can happen. Plaintiff presumably will seek to establish specific causation either through its accident reconstructionist or by attempting to draw inferences from the circumstantial evidence.
>
> Unlike the more typical case in which an expert testifies to specific causation and uses a statistical sampling method to determine the likelihood of the event occurring in the particular case, here plaintiff's expert proposes to testify about general causation and relies on modeling and a fault analysis to demonstrate known physical and electrical principles. . . .
>
> Defendant's dispute with Sero's . . . findings lies not in their possibility, but in the likelihood that such conditions will occur in the "real world." . . . . Disputes over the conclusions that can be drawn from the results of Sero's modeling analysis is properly the province of the jury.

Id. at 48-49. The Court finds the Jarvis case persuasive, and further finds that Defendant's arguments as to the plausibility of Dr. Booeshaghi's theories is a matter that goes to the weight of the doctor's testimony, which must be left to the jury.

With respect to the other Daubert factors, the Court finds that, while Dr. Booeshaghi has not performed any physical testing of his theory, Dr. Booeshaghi has reviewed the results of safety testing performed by a third party on the type of windshield at issue. [Doc. 50-8 at p. 17] Id. at 592-94; see also Byrne v. Gracious Living Indus., No. 01 Civ. 10153, 2003 U.S. Dist. LEXIS 2552, at *1 (S.D.N.Y. Feb. 25, 2003) (Despite a lack of "empirical testing," expert's "opinion as to the

7

manufacturing defect issue is sufficiently reliable-given his expertise and its foundation on observable conditions of the subject chair to leave the matter to the jury.") With respect to the second factor, while the issue of whether an amount of water could cause the type of windshield failure at issue in this case has not been the subject of peer review, the general area of windshield manufacture has been subjected to peer review. [Doc. 50-7 at p. 50] With respect to the third factor, there does not appear to be a known error rate for Dr. Booeshaghi's theories, but as the <u>Jarvis</u> court noted, the absence of the third factor is not an issue when an "expert proposes to testify about general causation and relies on modeling and a fault analysis to demonstrate known physical . . . principles." <u>Jarvis</u>, 283 F.3d at 48. Finally, as to the fourth factor, as was noted at the hearing by Defendants' experts, the general methodology employed by Dr. Booeshaghi is the same as that employed by the Defendant's experts, use of the scientific method, coupled with engineering principles, to calculate and model the forces allegedly present during the incident. Thus the methodology itself is accepted in the scientific community, though there is no evidence that the specific model established by Dr. Booeshaghi has ever been developed in the past. The Court further finds that Dr. Booeshaghi has reliably applied the principles and methods of his field to the facts of this case.

The Court notes that the Defendant's primary emphasis appears to be on the correctness, or incorrectness, of Dr. Booeshaghi's theories. However, the issue before the Court is "not the correctness of the expert's conclusions, but the soundness of his methodology." <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 43 F.3d 1311 (9th Cir. 1995). Based on all of the above, the Court finds that Dr. Booeshaghi's methodology is sufficient under <u>Daubert</u>.

**D.     Fit**

Finally, the Court must determine whether the opinion offered by Dr. Booeshaghi "fits" the facts of the case. More specifically, the Court must ensure that the proffered expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001). In this case, Defendant contends that Dr. Booeshaghi's opinions are inadmissible, because they rely on the premise that a one cubic foot body of water struck the Windshield, a premise which Defendant contends could not actually occur in the real world. However, Dr. Booeshaghi contends his opinion is based upon plaintiff Galloway's description of events. To the extent that Defendant disputes Galloway's description of the events at issue, that is a matter that must be left to the jury.

**E.     Conclusion as to Dr. Booeshaghi**

Therefore, for the reasons set forth above, the Court finds that, at this time, Dr. Booeshaghi's opinions satisfy the requirements of Daubert and are admissible at trial. Accordingly, Defendant's motion [Doc. 50] is hereby **DENIED**. As the Daubert court noted "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The Court finds this statement of law to be applicable in this matter.

However, the Court notes that while Defendant's expert witnesses were available at the Daubert hearing for cross-examination, Dr. Booeshaghi was not. The Court therefore respectfully **RECOMMENDS** that Defendant be allowed to voir dire Dr. Booeshaghi at trial, and, if Defendant feels it necessary, and the District Court finds it appropriate, revisit the issue of Dr. Booeshaghi's qualifications at that time.

9

**IV.     Plaintiffs' Motion in Limine to Exclude Testimony of Defendant's Proffered Expert, Heino W. Scharf [Doc. 51]**

Plaintiffs move the Court to exclude the testimony of Heino W. Scharf, one of Defendant's expert witnesses. Plaintiffs contend that Mr. Scharf lacks the expertise necessary to offer an opinion on this issue, that the experiment relied upon by Mr. Scharf to assist him in forming his opinion is too far removed from the facts of the case, that Mr. Scharf failed to use any specific methodology, that his opinion would not be helpful to the jury, and that some of Mr. Scharf's opinions were not disclosed in a timely manner. Defendant disagrees, arguing that Mr. Scharf's opinions satisfy Daubert and are admissible.

**A.     Background and Training**

Mr. Scharf earned a B.S. in Physics and Mathematics from Eastern Illinois University, and a J.D. from the University of San Fernando Valley College of Law. [Doc. 51-2] Mr. Scharf also attended UCLA's Night Extension program to take courses in Engineering. [Id.] Mr. Scharf has also taken courses in pursuit of an MBA, but has not completed such a program. [Id.]

As for work experience, Mr. Scharf testified that he has approximately 25 years experience with Defendant. Mr. Scharf has been Defendant's Director of Product Assurance since 1988, and prior to that served as Manager of Product Assurance. Before coming to work for Defendant, Mr. Scharf worked for approximately fourteen years with various companies in engineering positions, including engineering manager, chief engineer, and design engineer.

The Court finds that, while Mr. Scharf is not a licensed engineer and does not have a degree in engineering, Mr. Scharf's experience in the field of engineering, coupled with his engineering course work and his degrees in Mathematics and Physics, are sufficient to allow him to opine in this matter. Based upon Mr. Scharf's testimony at the hearing and the evidence of record, the Court

finds that Mr. Scharf's knowledge and training in this field are sufficient under Daubert, and any alleged weaknesses in Mr. Scharf's background are a matter that can be addressed on cross-examination.

**B.    Facts and Data**

In reaching his opinions, Mr. Scharf relied, in part, on the following pieces of information: engineering drawings of relevant portions of the Vehicle; the examination of the windshield and the driving light from an exemplar vehicle; the examination of the windshield opening and windshield retention device from both an exemplar vehicle and the Vehicle; Plaintiff Galloway's deposition and complaint; the description of the event provided by Plaintiff Galloway to his healthcare providers; police reports as to the incident; records produced by all parties in discovery; the examination of windshields and windshield retention devices of other vehicles; video footage of an exemplar vehicle being struck by a high pressure flow of water; warranty claims filed by Plaintiffs; and information relating to the scene of the accident. [Doc. 51-2] Based upon this information, the Court finds that Mr. Scharf's opinions are sufficiently grounded in the facts and data relating to the incident.

**C.    Methodology**

During the hearing, plaintiff's counsel argued, and the Defendant's experts agreed, that Defendant's experts employed the same methodology as that used by Plaintiff's expert. Accordingly, for the reasons set forth above with respect to Dr. Booeshaghi, the Court finds that the methodology employed by Mr. Scharf satisfies Daubert.

**D.    Fit and Assistance to the Jury**

In their motion, Plaintiffs contend that the hose experiment relied upon by Mr. Scharf in forming his opinions is too far removed from the facts of the case, and thus should be excluded.

11

Plaintiffs also argue that Mr. Scharf's second opinion is not helpful to the trier of fact, because it relates to matters well within the scope of knowledge of the ordinary person, and expert testimony is thus unnecessary.

With respect to the hose experiment, in which a high pressure stream of water from a fire hose was sprayed at an exemplar vehicle, the Court finds that the vehicle in question was sufficiently similar to the Vehicle in this matter so as to allow that portion of the opinion to be presented to the jury. Any weaknesses in such an opinion caused by the differences between the exemplar vehicle and the Vehicle may be addressed through cross-examination.

As to Mr. Scharf's second opinion, the Court finds that the second opinion, which compares the manufacturing process used by Defendant to that used by other manufacturers, but leaves to the jury what conclusion to draw from that fact, falls outside the knowledge of the lay person and is an area in which expert testimony will be helpful. The average juror would not have an extensive knowledge of the windshield installation processes used in the automobile industry, nor would the average juror have the training and expertise necessary to compare the methods used by Defendant to the methods in general use in the industry. Accordingly, the Court finds that it is appropriate for Mr. Scharf to offer an opinion in this area.

**E.     Timeliness**

Plaintiffs' motion next addresses the timeliness of additional opinions offered by Mr. Scharf after the expert disclosure deadline had passed. Specifically, Plaintiffs take issue with Mr. Scharf's deposition testimony that the incident in question was caused by some solid foreign object striking the Windshield. Plaintiffs also take issue with Mr. Scharf's testimony as to the "splash/spray" theory developed by Mr. Bird.

Fed. R. Civ. P. 26(a)(2)(B) provides, in part, that a party's disclosure regarding an expert witness must "contain a complete statement of all opinions to be expressed and the basis and reasons therefor." In the initial report (disclosed pursuant to Rule 26) Mr. Scharf did not opine that a solid object was the cause of the incident in question, nor did he address a "splash/spray" theory. As expressed by the Sixth Circuit in construing Fed. R. Civ. P. 26 and 37(c)(1), "a party who without substantial justification fails to disclose information required by Rule 26 . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." King v. Ford Motor Co., 209 F.3d 886, 901 (6th Cir. 2000).

The Court notes that the deposition in question occurred on December 18, 2007. [Doc. 51-3] The Court further notes that the trial in this matter, at the time of the filling of the instant motion, was scheduled for February 26, 2008, but was then continued to July 7, 2008. [Docs. 25, 133] Based upon these facts, the Court finds that, despite Defendant's failure to disclose these additional opinions as required, Plaintiffs will have had approximately seven months, by the date of the trial, in which to prepare for the two additional opinions. Accordingly, the Court finds that Defendant's failure to disclose these opinions in advance has not prejudiced the Plaintiffs, that Defendant's failure to disclose the additional opinions was harmless, and thus the opinions need not be excluded. However, given the ongoing duty to supplement disclosures, if Defendant has not already done so, Defendant is **DIRECTED** to produce a supplemental report disclosing Mr. Scharf's two additional opinions on or before **June 16, 2008**.

## F. Conclusion as to Mr. Scharf

For the reasons set forth above, the Court finds Mr. Scharf's opinions to be admissible under Daubert. Accordingly, Plaintiffs' motion [Doc. 51] is hereby **DENIED**. Plaintiffs will be able to

13

address any perceived weaknesses in Mr. Scharf's testimony on cross-examination.

V.  **Plaintiffs' Motion in Limine to Exclude Testimony of Defendant's Proffered Expert, Charles E. Bird [Doc. 53] and Plaintiffs' Motion in Limine to Exclude Supplemental Opinion Testimony of Defendant's Proffered Expert, Charles E. Bird [Doc. 57]**

Plaintiffs next move the Court to exclude the opinions and supplemental opinions of Defendant's second expert, Charles E. Bird ("Mr. Bird"). Plaintiffs contend that Mr. Bird is not qualified to opine in this matter, that his opinions will not assist the trier of fact, that Mr. Bird's methodology is lacking, and argue that, as with Mr. Scharf, Mr. Bird identified two additional opinions during his deposition which had not been disclosed in a timely manner. Plaintiffs further argue that the supplementary opinion offered by Mr. Bird is untimely and should be excluded. Defendants oppose the motion, arguing that Mr. Bird's opinions are appropriate and admissible.

A.  **Background and Training**

Mr. Bird is employed by Defendant as Senior Products Assurance Engineer. Mr. Bird does not hold any advanced degrees, but, in 2002, did obtain certification as a professional engineer in Virginia by completing 3,000 hours of study in the field of engineering and then passing the required tests. In addition, Mr. Bird also has approximately thirty years experience with Defendant, including time spent working on the truck assembly line. Mr. Bird states that he has worked in a number of engineering fields, though he actually took the professional engineering test for electrical engineering. [Doc. 53-2] Additionally, Mr. Bird testified that he has experience in the study of splash and spray projected by a vehicle's tires.

The Court finds that Mr. Bird's training and experience in the field of engineering, coupled with his work experience, are sufficient to allow him to opine in this matter. Based upon Mr. Bird's testimony at the hearing and the evidence of record, the Court finds that Mr. Bird's knowledge and

training in this field is sufficient under Daubert, and any alleged weaknesses in Mr. Bird's background are a matter that can be addressed on cross-examination.

**B.     Facts and Data**

In reaching his opinions, Mr. Bird relied, in part, on the following pieces of information: engineering drawings of relevant portions of the Vehicle; the examination of the windshield and windshield opening of a similar vehicle; the examination of the windshield gasket of the Vehicle, as well as the gasket from a similar vehicle; Plaintiff Galloway's deposition and complaint; the description of the event provided by Plaintiff Galloway to his healthcare providers; police reports as to the incident; records produced by all parties in discovery; applicable Federal Motor Safety Standards; and the relevant standards of the American National Standards Institute. [Doc. 53-2] Based upon this information, the Court finds that Mr. Birds's opinions are sufficiently grounded in the facts and data relating to the incident.

**C.     Methodology**

During the hearing, Plaintiff's counsel argued, and Defendant's experts agreed, that Defendant's experts employed the same methodology as that used by Plaintiff's expert. Accordingly, for the reasons set forth above with respect to Dr. Booeshaghi, the Court finds that the methodology employed by Mr. Bird satisfies Daubert.

**D.     Fit and Assistance to the Jury**

Plaintiffs argue that Mr. Bird's second opinion as to the size of the Windshield, will not assist the trier of fact in this matter because the opinion relates to an area within the knowledge of a lay person. Plaintiff contends that expert testimony is not needed solely for the purpose of informing the jury that a large object will not normally fit through a smaller opening. However, the

Court finds that Mr. Bird's second opinion offers more to the jury than the simple size comparison described by Plaintiffs. Mr. Bird's second opinion also encompasses the analysis of the types of forces at work on a windshield, as well as an analysis of the design of the windshield and windshield gasket, and how that design is intended to prevent such failures. The Court finds that these areas all fall outside the knowledge of the lay person, and thus expert testimony is appropriate.

**E.      Timeliness**

As with Mr. Scharf, Plaintiffs again contend that, at his September 12, 2007, deposition, Mr. Bird presented two previously undisclosed opinions: that the incident in question was caused by some solid foreign object striking the Windshield, and his "splash/spray" theory. For the reasons set forth with respect to Mr. Scharf, the Court finds that Defendant's failure to timely disclose the two additional opinions was harmless, and thus the opinions need not be excluded. However, given the ongoing duty to supplement disclosures, if Defendant has not already done so, Defendant is **DIRECTED** to produce a supplemental report disclosing Mr. Bird's two additional opinions on or before **June 16, 2008**.

Similarly, with respect to Mr. Bird's supplement opinion, disclosed December 12, 2007, the Court finds that, while untimely, Plaintiffs have had ample time to prepare for trial and thus the failure to timely disclose the supplemental opinion was harmless.

**F.      Conclusion as to Mr. Bird**

For the reasons set forth above, the Court finds Mr. Bird's opinions to be admissible under Daubert. Accordingly, Plaintiffs' motions [Docs. 53, 57] are hereby **DENIED**. Plaintiffs will be able to address any perceived weaknesses in Mr. Bird's testimony on cross-examination.

## VI. Conclusion

For the reasons set forth above, Defendant's motion to exclude the expert testimony of Dr. Booeshaghi [Doc. 50] and Plaintiffs' motions to exclude the expert testimony of Mr. Scharf and Mr. Bird [Docs. 51, 53, 57] are hereby **DENIED**. Defendant, if it has not already done so, is **DIRECTED** to provide a supplemental report as to the opinions of Mr. Scharf and Mr. Bird on or before **June 16, 2008**. Additionally, the Court respectfully **RECOMMENDS** that Defendant be allowed to voir dire Dr. Booeshaghi at trial, and, if Defendant feels it necessary, and the District Court finds it appropriate, revisit the issue of Dr. Booeshaghi's qualifications at that time.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge